SHEPPARD MULLIN RICHTER & HAMPTON LLP
Theodore C. Max (TM1742)
tmax@sheppardmullin.com
30 Rockefeller Plaza
New York, New York 10112
Telephone: 212-653-8700
Facsimile: 212-653-8701
*Attorneys for Plaintiff The North Face Apparel Corp.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| THE NORTH FACE APPAREL CORP.,<br><br>            Plaintiff,<br><br>      v.<br><br>JOHN DOE ENTITY, a business entity of unknown structure,<br><br>            Defendant. | Civil Action No. 1:18-cv-7478<br><br>**COMPLAINT** |

Plaintiff, The North Face Apparel Corp., ("The North Face" or "Plaintiff"),[1] hereby sues

Defendant, John Doe Entity (the "Defendant"), whose actual identity is currently unknown, and

alleges as follows:

## NATURE OF THE ACTION

1.      This action arises out of Defendant's unauthorized importation and offer to sell in

the United States at least one hundred eighty thousand, six hundred and forty six (180,646) units

of The North Face branded apparel products that are non-genuine under the law because they are

materially different from genuine The North Face products made for, marketed, and sold by the

Plaintiff in the United States.  The North Face and its related entities intentionally manufacture

and market materially different product lines to different markets worldwide based on regional

---

[1] The Plaintiff, The North Face Apparel Corp., is related and is an ultimate subsidiary of V.F. Corporation which is a global leader in branded lifestyle apparel, footwear and accessories.

differences in styles and sizing.  The offering for sale and sale of non-genuine goods by the Defendant misrepresents to consumers the nature and quality of genuine The North Face goods and causes irreparable harm to The North Face's reputation.  The North Face asserts claims for trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition and false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); and violation of the common law of New York.  Plaintiff seeks temporary, preliminary and permanent injunctive relief to prevent the sale, shipment, and dissemination of Defendant's non-genuine infringing goods, an accounting of any of Defendant's profits flowing from its sale of infringing products, damages, attorneys' fees, and such other relief as the Court deems just and proper.

## PARTIES

2.      Plaintiff The North Face is a company organized and existing under the laws of the State of Delaware, having its principal place of business at 3411 Silverside Road, Wilmington, DE 19810.

3.      Genuine goods bearing The North Face's registered trademarks identified on Schedule "A" hereto (the "TNF Marks"), are offered for sale and sold by a related operating company within the V.F. Corporation's family of companies, through various channels of trade including within the State of New York and this district, and throughout the United States. Defendant is offering to sell its infringing goods bearing the TNF Marks, is directly, and unfairly, competing with The North Face's economic interests at least within the State of New York and is causing The North Face harm within this jurisdiction.

4.      Upon information and belief, Defendant resides and conducts substantial business directly related to the offer to sell the infringing goods at issue within this district.  The Defendant

is offering to sell the infringing goods at issue as the undisclosed principal of its agent, a Palm Beach, Florida based attorney, Jonathan Chane of Chane Law Firm. The North Face is presently unaware of the true name of Defendant which its agent has expressly declined to disclose other than to identify it generally as a New York financial institution.  The North Face will amend this Complaint upon discovery of the true identity of the Defendant.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter of this action pursuant to § 39 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1121, and under §§ 1331, 1338(a) and 1338(b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) and 1338(b).  The Court has supplemental jurisdiction over the state law claims under § 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

6.     This Court has personal jurisdiction over Defendant because it is offering to sell a substantial quantity of the non-genuine infringing goods at issue through an agent in this district, and therefore intentionally causing injury to The North Face within this state and district.

7.     Venue is proper in this district pursuant to §§ 1391(b) and (d) of the Judicial Code, 28 U.S.C. § 1391(b) and (d), because Defendant is subject to personal jurisdiction in this district because a substantial portion of the events at issue have arisen and will arise in this judicial district and The North Face is suffering harm in this judicial district.

## COMMON FACTUAL ALLEGATIONS

### The North Face's Trademark Rights

8.     The North Face is the owner of all rights, title, and interest in the TNF Marks identified on Schedule "A" hereto, which are valid and registered on the Principal Register of the United States Patent and Trademark Office.

9.      The TNF Marks are used in conjunction with the manufacture and distribution of high quality goods in the categories identified in Schedule "A." True and correct copies of the Certificates of Registration for the TNF Marks are attached hereto as Composite Exhibit "1."

10.     The TNF Marks have been used in interstate commerce to identify and distinguish high quality goods for an extended period of time and serve as symbols of The North Face's quality, reputation and goodwill.

11.     Further, The North Face and its related companies have expended substantial time, money and other resources developing, advertising and otherwise promoting the TNF Marks.

12.     The North Face and its related operating company have extensively used, advertised and promoted the TNF Marks in the United States in connection with the sale of high quality goods.  As a result, the TNF Marks are among the most widely recognized apparel related trademarks in the United States, and the trademarks have achieved secondary meaning as identifiers of high quality goods.

13.     The TNF Marks are vital to The North Face, and The North Face will suffer irreparable harm if any third parties, including Defendant, are allowed to continue offering and selling infringing goods utilizing and/or bearing identical or substantially similar trademarks to the TNF Marks.

**Maintaining the Image and Value of The North Face Brand**

14.     Since 1966 The North Face has provided high quality gear designed for individuals engaged in athletic activities.

15.     The North Face expends substantial resources on market research in order to develop and offer for sale products on a global level suited to the different markets in which it operates as a global company. Considerations in this regard include styles, colors, fit, and pricing

all of which tend to vary between different geographic markets.

16.     A crucial part of The North Face's success is its ability to tailor the goods it offers for sale in specific markets to the consumers of those markets and to guarantee the quality of its products, including the consistency of style and fit. Genuine The North Face branded goods made for sale in Europe are sized based on a European Union Fit Block, the sizing of which is distinctly different from the Fit Block used to size goods designed for sale in the United States. Specifically, the goods designed for and sold in the European market are sized smaller and cut differently than those designed and sold in the United States. The North Face branded goods made for and sold in the European market have an entirely different fit, because they are designed (i) for a different body type and European consumer preferences as to length, width, and comfort, and (ii) based in part on consumer feedback by geographical region. Some product lines are designed for functional athletic use, while others are designed with a greater emphasis on aesthetic and recreational use. Accordingly, The North Face products manufactured and sold in Europe will fit consumers differently than those made for the United States.

17.     Additionally, The North Face brand emphasizes the fit and style of its product lines by geographic market. For example, a color palette used for collection of goods destined for the U.S. market may be distinct even in minor ways from a color palette used for a European collection. As a result, the European goods cannot be presented next to the U.S. goods because the result would be visually unappealing to consumers to the detriment of the high-quality presentation that The North Face brand expends significant resources in market analysis to curate. This issue presents itself for e-commerce sales as well, where differences in color when placed side-by-side in an electronic format can be distracting. The North Face expends significant resources to curate its collections so they will be visually appealing to its consumers and the goods

"fit" together as a cohesive whole. The introduction of a non-harmonious element in the United States marketplace is likely to cause consumers to misperceive The North Face brand.

18.     In certain, very specific and rare, circumstances, The North Face will introduce a capsule collection that was originally designed for a different market and offer it for sale in the United States.   The purpose of these capsule collections is to present stand-alone "European experience" or "Asian experience" collections.   Moreover, such limited introductions of capsule collections take place at company operated locations with employees trained to alert consumers to the unique nature of the goods. The North Face undertakes this additional expense in order to avoid consumer confusion and to safeguard its practice of presenting consumers with product lines which are harmonious both in style, color, fit, and sizing per market.

19.     The individual products that comprise The North Face's product line and the product line as a whole are what the consumer encounters and what form the basis for consumer perception of The North Face brand.   In order to remain at the forefront of the apparel industry, it is crucial to the success of the brand that The North Face products offered at retail continue to reflect high quality and consistency in fit and style.

20.     Further, because the distribution of high quality and consistent products is important to The North Face, The North Face provides warranties for its products.   For genuine goods distributed in the United States, The North Face offers a product lifetime warranty. Conversely, for The North Face branded goods designed for and distributed in Europe, The North Face's European counterpart provides only a two (2) year limited warranty. Moreover, the two year warranty provided in connection with the European goods, including those at issue in this case, does not provide for coverage in the United States.

**Defendant's Offer to Sell Infringing Goods**

21.      In or about late July 2018, representatives of V.F. Corporation in the United States

were contacted by Jonathan C. Chane, an attorney based in Palm Beach, Florida with an offer to

sell to V.F. Corporation one hundred eighty thousand, six hundred and forty six (180,646) pieces

of The North Face branded goods (the "Infringing Goods") for the total sum of twenty-eight

million, five hundred thousand U.S. dollars (USD 28,500,000.00). Mr. Chane informed V.F.

Corporation that the offer was being made on behalf of a client whose identity he refused to

disclose.

22.      Upon information provided to V.F. Corporation by Mr. Chane, by email dated

August 1, 2018 (the "August 1st Email"), and V.F. Corporation's belief in the veracity thereof, the

goods are currently warehoused in Los Angeles, California.

23.      Upon information provided to V.F. Corporation by Mr. Chane in the August 1st

Email, the Infringing Goods offered to V.F. Corporation for re-purchase appear to have originally

been purchased from V.F. Corporation's Russian subsidiary, V.F. CIS Limited Liability Society

("V.F. CIS") by a Russian company named Kvantum. V.F. CIS was informed by Kvantum that it

would purchase them for delivery exclusively to the Public Organization Russian Sport Society

known as "Lokomotiv." Lokomotiv is a well-known membership-based not-for-profit

organization which was established for the promotion of sport and physical education in rail

transport and companies active in this sector. According to the ultimate terms of delivery, the

goods were expressly prohibited from being resold outside of The Russian Federation.  It appears

now that Kvantum misrepresented to V.F. CIS its relationship to Lokomotiv and its intention with

respect to the Infringing Goods.

24.      Upon information provided to V.F. Corporation by Mr. Chane, by email dated

August 13, 2018 (the "August 13th Email"), and V.F. Corporation's belief in the veracity thereof, the undisclosed principal offering to sell the goods through Mr. Chane is a New York based financial institution.

25.    The Infringing Goods are products that The North Face does not sell in the United States. Specifically, the Infringing Goods are sized and fit differently from goods sold in the United States  under the TNF Marks and are covered by a warranty which is distinct from the warranty offered for genuine The North Face products offered for sale in the United States.

26.    The North Face products designed for the European market and cut on the European Union Fit Block vary from the U.S. Fit Block product cuts in both shape and proportion.  For example, the European fit is designed for a leaner silhouette, with a preference for a tapered bust fit and narrower shoulder cut.  By way of example, the sizing differences between the European and U.S. versions the products at issue can be as much as 3 inches across the chest and 3.5 inches at the waist. Similar size differences exist at the biceps, shoulders, and sweep.

27.    The North Face size markings are global, such that all "Small" sizes globally will convey the size "Small" on their respective hang-tags.  The hangtags will not call out which geographical market they were originally designed for and sold in.  As a result, potential U.S.-based consumers of the Infringing Goods would have no clear indication from the Infringing Goods themselves that the dimensions of the goods' sizes are different from The North Face U.S. sizing standards, likely leading to consumer confusion and dissatisfaction in The North Face Brand.

28.    The sizing and fit differences between European and U.S. cut goods are significant. As such, the Infringing Goods are materially different from the genuine The North Face products The North Face offers for sale and sells in the United States.  Such material differences render the

Infringing Goods non-genuine, infringing products.

29.     Because of the differences in fit between goods cut on the European Union Fit Block and those cut on the U.S. Fit Block, the product lines of the Infringing Goods that have U.S. market equivalencies, notably the Thermoball line products, will be incompatible with genuine U.S. market The North Face products that are companion pieces to the Infringing Goods, either as zip-in inserts, or jacket shells.  The incompatibility in fit between the Infringing Goods and genuine The North Face-branded goods will likely result in consumer dissatisfaction and will tarnish The North Face's reputation as the purveyor of high-quality athletic gear designed for compatibility in product lines.

30.     By selling the Infringing Goods, Defendant is usurping The North Face's ability to control the quality of its products, and how its brand is presented to consumers including which individual products are even included in its U.S. product line. The Defendant is thereby misrepresenting to consumers the very nature of The North Face brand that The North Face has carefully developed and cultivated in the United States.

31.     By engaging in these infringing activities, Defendant is acting in willful disregard of the laws protecting The North Face's rights in its trademarks, and have confused and deceived, and/or intend to confuse and deceive, the consuming public and the public at large concerning the source and sponsorship of the Infringing Goods.  Upon information and belief, Defendant is using the TNF Marks in order to compete with and otherwise benefit from the recognition and goodwill of the TNF Marks and from the desirability of products bearing the TNF Marks.

32.     Defendant's infringing activities are likely to injure The North Face's goodwill and reputation.  Given the importance of maintaining The North Face's reputation among consumers and the trade as a leader and innovator in the athletic gear industry, it would be very damaging to

The North Face brand if consumers encountered the Infringing Goods in the marketplace. The sales of products that are materially different in their sizing and warranty coverage and/or otherwise inconsistent with the demands of the U.S. market, conveys that such products are part of The North Face's U.S. Product line, which is false. Inevitably, this would cause consumers to misperceive the nature of The North Face brand that The North Face expends vast resources to develop and protect, and to question The North Face's reputation for creating reliable high quality products of consistent sizing and style.

33. Defendant's offering for sale and sale of the Infringing Goods unfairly and unlawfully wrests from The North Face control over its trademarks and reputation. If Defendant's conduct is not enjoined, it will greatly injure the value of the TNF Marks to The North Face and the ability of The North Face to indicate to consumers the high quality and reliability that consumers have come to expect from The North Face.

34. Defendant's infringing activities have caused and will continue to cause irreparable damage to the business and goodwill of The North Face unless permanently restrained by this Court.

35. The North Face has no adequate remedy at law.

**FIRST CLAIM FOR RELIEF:**
**TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1))**

36. The North Face repeats and re-alleges paragraphs 1 through 35 above as if fully set forth herein.

37. Defendant's importation, distribution, offering for sale and sale of the Infringing Goods, which are materially different from The North Face-branded products distributed and sold by The North Face in the United States, is likely to cause confusion, or to cause mistake or to

deceive Defendant's customers, potential consumers, and/or the public as to the nature of the Infringing Goods, including but not limited to whether The North Face guarantees the quality of the Infringing Goods and whether the Infringing Goods conform with the style and sizing of The North Face's current U.S. product line.  Such confusion is inevitable here where Defendant is offering for sale and selling the Infringing Goods as The North Face products.

38.     Defendant's acts are intended to reap the benefit of the goodwill that The North Face has created in its marks and constitute infringement of The North Face's federally-registered trademarks in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

39.     Defendant's conduct has caused and is causing immediate and irreparable injury to The North Face and will continue to both damage The North Face and deceive the public unless enjoined by this Court.  The North Face has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF:**
**FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a))**

40.     The North Face repeats and re-alleges paragraphs 1 through 39 above as if fully set forth herein.

41.     Defendant's knowing and intentional importation, distribution, offering for sale and sale of the Infringing Goods, which are materially different from The North Face-branded products distributed and sold by The North Face in the United States, constitutes false representation with respect to the nature of Defendant's goods, including but not limited to whether The North Face guarantees the quality of the Infringing Goods and whether the Infringing Goods are part of The North Face's current U.S. product line.  Such confusion is inevitable here where Defendant is offering for sale and selling the Infringing Goods as The North Face products.

42.     Defendant's sale of the Infringing Goods is likely to cause confusion, mistake, or

deceive as to the nature of Defendant's goods and is likely to create the false impression that Defendant is affiliated with The North Face or that the Infringing Goods are authorized, sponsored, endorsed or guaranteed by The North Face.  Defendant's actions constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

43.     Defendant's conduct will cause immediate and irreparable injury to The North Face and will both damage The North Face and deceive the public unless enjoined by this Court.

44.     The North Face has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF:
### FEDERAL DILUTION (15 U.S.C. § 1125(c)(1))

45.     The North Face repeats and re-alleges paragraphs 1 through 44 above as if fully set forth herein.

46.     The TNF Marks are famous and well known throughout the United States, having been used exclusively and extensively by The North Face for decades.  By reason of The North Face's extensive advertising and use, the TNF Marks have become highly distinctive of The North Face's goods, and are uniquely associated with The North Face.  The TNF Marks were famous long before Defendants imported, offered for sale or sold the Infringing Goods.

47.     Defendant's unauthorized distribution and sale of The North Face-branded products that do not comply with The North Face's quality control policy and that are not among The North Face's current U.S. product line and sizing standards will tarnish The North Face's reputation and injure the value of the TNF Marks to The North Face as indicators of the high quality goods that consumers have come to expect from The North Face, in violation of 15 U.S.C. § 1125(c).

48.     Upon information and belief, Defendant does not own any federal or state

-12-

trademark registrations for any mark that includes, in whole or in part, any of the TNF Marks, and cannot assert any rights in the TNF Marks that are prior to The North Face's rights.

49.     Defendant's conduct has caused and is causing immediate and irreparable injury to The North Face and will continue to both damage The North Face and deceive the public unless enjoined by this Court.

50.     The North Face has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF:**
**TRADEMARK INFRINGEMENT AND**
**UNFAIR COMPETITION UNDER NEW YORK COMMON LAW**

51.     The North Face repeats and re-alleges paragraphs 1 through 50 above as if fully set forth herein.

52.     Defendant has wrongfully used the TNF Marks with full knowledge of The North Face's prior rights in these marks and of the fame and success of The North Face's products sold under and bearing those marks.  Defendant's unauthorized use of the TNF Marks is for the willful and calculated purpose of misappropriating and trading on The North Face's goodwill and business reputation.  Defendant has used imitations of the TNF Marks for the willful and calculated purpose of causing confusion and mistake among the public and the trade, and of deceiving the public and the trade as to the nature and origin of Defendant's products, in violation of The North Face's rights under the common law of the state of New York.

53.     Defendant was on notice of The North Face's exclusive rights in the TNF Marks before using the identical marks to sell the Infringing Goods.  Defendant's use of marks identical to the TNF Marks is willful, in bad faith, with full knowledge of The North Face's prior use of, exclusive rights in, and ownership of the TNF Marks, with full knowledge of the reputation and goodwill associated with the TNF Marks, and with full knowledge that Defendant has no right,

license, or authority to use marks confusingly similar to the TNF Marks. By using marks identical to The North Face's valuable and famous trademarks, Defendant has been unjustly enriched and The North Face has been damaged.

54.   The aforesaid conduct of Defendant constitutes common law trademark infringement and unfair competition under the laws of the State of New York.

55.   Defendant's conduct has caused and is causing immediate and irreparable injury to The North Face and will continue to damage The North Face and deceive the public unless enjoined by this Court.

56.   The North Face has no adequate remedy at law.

## PRAYER FOR RELIEF

57.   **WHEREFORE**, Plaintiff The North Face respectfully demands judgment as follows:

1)   That a permanent injunction be issued enjoining Defendant, and any of its respective officers, agents, privies, shareholders, principals, directors, licensees, attorneys, servants, employees, affiliates, subsidiaries, successors and assigns, and all those persons in concert or participation with them, and any entity owned or controlled in whole or in part by them, from:

(a)   Importing, distributing, advertising, offering for sale or selling the Infringing Goods;

(b)   using any of the TNF Marks, or any simulation, reproduction, copy, colorable imitation or confusingly similar variation of any of the TNF Marks in or as part of a design, logo, domain name, or trademark; using any such mark in connection with the importation, exportation, promotion, advertisement, sale,

-14-

offering for sale, manufacture, production, or distribution of any business, product or service; and from using any such mark on or as a feature of any product;

(c)       processing, packaging, and transporting any product bearing any of the TNF Marks or any mark that is a simulation, reproduction, copy, colorable imitation or confusingly similar variation of any of the TNF Marks;

(d)       selling, offering, distributing, disseminating, or otherwise providing any product that bears any of the TNF Marks, or any mark that is a simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of the TNF Marks;

(e)       using any false designation of origin or false description (including, without limitation, any letters or symbols), or performing any act, which can, or is likely to, lead members of the trade or public to believe that Defendant is associated with The North Face or that any products imported, manufactured, distributed, or sold by Defendant are in any manner associated or connected with The North Face, or are authorized, licensed, sponsored or otherwise approved by The North Face;

(f)       purchasing any of the TNF Marks in connection with any sponsored advertising on the Internet, or using any of the TNF Marks in any source code or otherwise using any of the TNF Marks such that a search for The North Face on the Internet will cause any domain name or website of Defendant to appear in the search results;

(g)       engaging in any other activity constituting unfair competition with The

North Face, or constituting an infringement of any of the TNF Marks;

(h)     diluting or tarnishing any of the TNF Marks; and

(i)     assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (h) above.

2)     Directing that Defendant, at its own expense, recall any and all Infringing Goods from any distributors, retailers, vendors or others to whom it has distributed or sold such products.

3)     Directing that Defendant deliver up to The North Face [for destruction] all goods, labels, tags, signs, stationery, prints, packages, promotional and marketing materials, advertisements and other materials (a) currently in its possession or control or (b) recalled by Defendant pursuant to any Order of this Court that incorporate, feature or bear any of the TNF Marks, or that include any simulation, reproduction, copy or colorable imitation of any of the TNF Marks, and all plates, molds, matrices and other means of making the same.

4)     Directing that Defendant make all books, records (including all hard drives on computers used for business purposes, including servers, as well as all computer disks and back up disks) and other documents concerning all transactions relating to the Infringing Goods available to The North Face for review, inspection and copying, and provide The North Face the names, addresses and all other contact information in Defendant's possession (*e.g.*, telephone numbers, fax numbers) for the source of the Infringing Goods, including all [manufacturers], distributors and/or suppliers.

5)     Directing such other relief as the Court may deem appropriate to (a) prevent the public from being deceived as to the source of Defendant's goods; and (b) prevent Defendant from

using any marks that copy or are substantially identical to the TNF Marks.

6)       Directing that Defendant file with the Court and serve upon The North Face's counsel within thirty (30) days after entry of judgment a report in writing under oath, setting forth in detail the manner and form in which it has complied with the above.

7)       Awarding The North Face its actual damages, including the cost of Infringing Goods paid for by The North Face, trebled pursuant to 15 U.S.C. § 1117(a), arising out of Defendant's acts of willful trademark infringement, dilution and unfair competition based on Defendant's use of the TNF Marks.

8)       Requiring Defendant to account for and pay over to The North Face three times the profits realized by Defendant from its infringement of the TNF Marks and its unfair competition with The North Face.

9)       Awarding to The North Face exemplary and punitive damages to deter any further willful infringement as the Court finds appropriate.

10)      Awarding to The North Face its costs and disbursements incurred in this action, including reasonable attorneys' fees pursuant to 15 U.S.C. §1117(a).

11)      Awarding to The North Face interest, including pre-judgment interest on the

foregoing sums.

      12)    Awarding to The North Face such other and further relief as the Court may deem

just and proper.

Respectfully submitted,

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Dated:  August 16, 2018
          New York, New York

/s/Theodore C. Max
_____
Theodore C. Max (TM 1742)
30 Rockefeller Plaza
New York, New York 10112
Telephone: 212-653-8700
Facsimile: 212-653-8701

*Attorneys for Plaintiff The North Face Apparel Corp.*

SCHEDULE "A"
THE NORTH FACE APPAREL CORP.'s
FEDERALLY REGISTERED TRADEMARKS

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| THE NORTH FACE | 0,983,624 | May 14, 1974 | IC-22 - Backpacks<br>IC-28 - Sleeping bags, tents, snowshoes, and skis<br>IC-25 - Camping clothing namely rainwear, parkas, vests, trousers, shoes, gloves and headgear |
|  | 1,030,071 | January 13, 1976 | IC 018 - Backpacks<br>IC 020 - Sleeping bags<br>IC 022 - Tents<br>IC 025 - Camping clothing, namely, rainwear, parkas, vests, trousers, shoes, gloves, headgear and snowshoes |
|  | 2,097,715 | September 16, 1997 | IC 018 - Backpacks<br>IC 020 - Sleeping bags<br>IC 022 - Tents<br>IC 025 - Clothing, namely, parkas, vests, jackets, anoraks, pants, ski bibs, gloves, mittens, underwear, hats, headbands, caps, ski suits, gaiters, shorts, and shirts |
| NEVER STOP EXPLORING | 2,897,197 | October 26, 2004 | IC-18 - backpacks, luggage, duffel bags, waist packs<br>IC-20 - Sleeping bags<br>IC-22 – tents<br>IC-25 - Clothing, namely, t-shirts, tops, shorts, sweatshirt, sweaters, pants, jackets, vests, anoraks, ski suits, ski jackets, ski vests, rain jackets, and rain pants, footwear and headwear |
|  | 3,630,846 | June 2, 2009 | IC 025 - Footwear; head wear; rainwear; scarves; ski wear; socks |

| | | | |
|---|---|---|---|
|  | 3,630,850 | June 2, 2009 | IC 025 - Footwear; gloves; headgear, namely, hats, caps, headbands, visors, ear muffs; hosiery, namely long underwear; jackets; mittens; pants; parkas; shirts; shorts; ski jackets; skirts; socks; tights; vests |